UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| REBECCA S.[1], | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 2:20cv437 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, and application for Widow's Insurance Benefits (WIB) under Title II of the Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

   1. It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the

       Social Security Act.

2. The prescribed period ends on February 28, 2026.

3. The claimant has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

4. The claimant has the following severe impairments: spondylolisthesis of the lumbar spine, osteoporosis, Crohns disease and diverticulitis (20 CFR 404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry and push and/or pull up to 20 pounds occasionally and 10 pounds frequently. Stand and/or walk for about 6 hours in a 8-hour work day and sit about 6 hours in a 8-hour work day. Occasionally climb ladders, ropes or scaffolds. Never climb ramps and stairs. Occasionally balance, stoop, kneel, crouch, and crawl. Due to headaches understand, remember and carry out simple instructions. No fine detailed work such as threading a needle. Needs ready access to restrooms. No work around hazards. No operating motor vehicles.

7. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on September 29, 1967 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

    12.    The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 26-36).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on September 15, 2021. On November 23, 2021, the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on December 17, 2021. Upon full review of the record in this cause, this Court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature

of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff alleges severe spondylolisthesis of the lumbar spine, osteoporosis, Crohn's disease, diverticulitis, and depression. At the initial level, the non-examining State agency reviewing doctor, J.V. Corcoran, M.D., opined in November 2018 that Plaintiff had severe degenerative disc disease and had the RFC to perform medium work, lifting 50 pounds occasionally and 25 pounds frequently, sitting, standing, and walking for six hours daily with frequent postural limitations. (Tr. 68-71.)

At the reconsideration level for purposes of Plaintiff's WIB claim, S. Hill, Ph.D. opined in July 2019 that Plaintiff had non-severe depression resulting in mild limitations in concentrating, persisting, or maintaining pace. (Tr. 79-80.) J. Sands, M.D. opined in June 2019 that Plaintiff had severe degenerative disc disease and had the RFC to perform light work, lifting 20 pounds occasionally and ten pounds frequently and sitting, standing, and walking for six hours daily; she could never climb ladders, ropes or scaffolds, occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 79-83.) Dr. Sands also opined that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of her symptoms were substantiated by the objective medical evidence alone. (Tr. 81.) Those doctors affirmed their opinions at the reconsideration level for purposes of the SSI claim as well. (Tr. 89-94.)

In support of remand, Plaintiff first argues that the ALJ's RFC assessment is not supported by substantial evidence. The ALJ found that Plaintiff could perform light-level work with postural, environmental, mental, and bathroom limitations. (Tr. 29-30.) The ALJ largely based that conclusion on the reconsideration level State agency review, dated June 24, 2019. (Tr.

79-83, 93.) The ALJ held that the reconsideration level "opinion is within the purview of his expertise, based on his particular and detailed knowledge of the standard of disability as set forth by the Commissioner, and consistent with the record as a whole." (Tr. 34.) However, the ALJ stated that the doctor "did not have the benefit of review[ing] records submitted after his opinion, personally examining the claimant, or hearing her testify. In light of this additional evidence, the undersigned finds additional limitations to be appropriate." (Tr. 34-35.)

SSR 96-8p requires that the ALJ describe how the evidence supports the RFC conclusions, citing specific medical facts and non-medical evidence. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ needed to explain how she reached her conclusions about Scott's physical capabilities...."). Here, the reconsideration level opinion was largely based on two consultative examinations which reflected a tender lumbar spine with limited range of motion and a positive straight leg raise test as well as knee and cervical spine range of motion limitations. (Tr. 82-83, 93.) The opinion was not based upon imaging of Plaintiff's spine. *Id*. After that opinion, a lumbar spine x-ray dated March 2020 showed narrowing of the L4-5 and L5-S1 disc spaces resulting in grade 1 spondylolisthesis of L4 on L5; L5 was sacralized and asymmetrical. (Tr. 825.) Plaintiff points out that no physician reviewed this evidence and opined that the ultimate RFC limitations were sufficient. *Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013) ("No physician testified—no medical records [re]vealed—that Garcia has the residual functional capacity ascribed to him by the administrative law judge").

The ALJ opined that findings of spondylolisthesis supported a limitation to light work, and summarized the spine x-ray's findings. (Tr. 31, 34-35.) Plaintiff argues that while the ALJ may have summarized subsequent documentation, the ALJ should have submitted the only spine

6

imaging study in the record—which post-dated the last State agency opinion—to medical scrutiny rather than interpreting its significance without medical input. *Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018) ("the ALJ was not qualified to make his own determination without the benefit of an expert opinion…he could have sought an updated medical opinion"). Plaintiff contends that the ALJ reached an impermissible medical conclusion in finding that the x-ray would not have altered the State agency doctor's opinion of Plaintiff's RFC. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJs required to rely on expert opinions instead of determining the significance of medical findings themselves); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (new and potentially decisive medical evidence must be submitted to medical scrutiny).

The record also reflects a November 2019 hospitalization for an exploratory laparoscopy which revealed a small bowel obstruction. (Tr. 527, 535, 565, 597, 605.) Examination also showed tenderness with palpation in the epigastrium and guarding with palpation. (Tr. 456.) Plaintiff argues that while the State agency doctor referenced a small bowel obstruction previously noted in May 2019, (Tr. 90), this unreviewed hospitalization demonstrated that Plaintiff's intestinal impairment remained problematic and likely resulted in further functional limitations including a need to more frequently use the bathroom, as Plaintiff alleged. (Tr. 53.) Plaintiff asserts that this evidence, reflecting a fuller portrait of Plaintiff's GI issues, should have been evaluated by a medical professional. *Akin*, 887 F.3d at 317-18; *Goins*, 764 F.3d at 680.

In response, the Commissioner argues that later-submitted evidence does not render an opinion stale unless that evidence shows a worsening in the claimant's condition. However, the Seventh Circuit has held that evidence from non-treating physicians who have not had access to a claimant's full medical record is "essentially worthless." *Childress v. Colvin*, 845 F.3d 789, 792

(7th Cir. 2017). The Commissioner contends that because of the lack of additional back and intestinal impairment evidence reflecting a worsening after the State agency opinion, the ALJ did not err by considering that evidence. The Commissioner claims that the lumbar x-ray postdating the last State agency opinion would not have changed that doctor's opinion. However, this Court cannot conclude that the ALJ properly found that findings of spondylolisthesis supported a finding to light work as that finding was a speculative, lay finding not based on any medical input.

The Commissioner also contends that the laparoscopy post-dating the last State agency opinion did not evidence greater limitations. Clearly, this is pure speculation. The evidence, which reflected a fuller portrait of Plaintiff's GI issues, including small bowel obstruction and epigastric tenderness, should have been evaluated by a medical professional. The Commissioner also claims that because Plaintiff reported constipation, she did not require any further bathroom break accommodation. However, this is an impermissible selective reading of the evidence. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

Accordingly, remand is warranted for a proper medical evaluation of the later-submitted evidence.

Next, Plaintiff argues that when she had Crohn's flare-ups she had no control over her need to use the restroom, which was not accounted for in the RFC. (Tr. 53.) She wore Depends and took ten trips to the bathroom during an eight-hour period. (Tr. 53.) The ALJ opined that Plaintiff's GI issues were accommodated by environmental limitations and bathroom access. The ALJ included an allowance for "ready access to restrooms" in the RFC. (Tr. 30.) While the ALJ discussed whether Plaintiff was in fact diagnosed with Crohn's disease or not, the ALJ

8

clearly found that both Crohn's and diverticulitis were severe impairments. (Tr. 27.) Once the ALJ did so, the ALJ was obligated to include all limitations from those impairments in the RFC. SSR 96-8p; *Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (RFC assessments and hypothetical questions must include all limitations supported by the record).

In *Sikorski v. Berryhill*, 690 Fed.Appx. 429, 433 (7th Cir. 2017), the Seventh Circuit remanded where the ALJ did not determine the frequency of a claimant who suffered from Crohn's disease's need for bathroom breaks. Here, the ALJ did not determine the frequency of Plaintiff's bathroom breaks, and instead included an allowance for "ready access" to the bathroom, without further detail. (Tr. 30.) Plaintiff's testimony constituted a clear statement of how often she needed to use the bathroom. (Tr. 34); *Scott*, 647 F.3d at 740 (remanding where the claimant produced evidence of her alleged limitation in the form of her testimony which the ALJ failed to account for in determining her RFC). It is undisputed that the ALJ found that GI issues caused the need for increased bathroom use and accessibility. Plaintiff stated to consultative examiner Dr. O'Danovich that her bowel movements could take minutes or hours. (Tr. 452.) In addition to contradicting the ALJ's conclusion that Plaintiff did not report her bathroom frequency allegations to a doctor, this evidence supports the contention that Plaintiff's bowel movements would take her off-task and require her to be in the bathroom for long periods of time. The ALJ thus erred in failing to determine the actual frequency of Plaintiff's bathroom breaks as required by *Sikorski*, requiring remand on this issue.

The ALJ found that Plaintiff had a non-severe adjustment disorder with anxiety and depressed mood and mild limitations in concentrating, persisting, or maintaining pace. (Tr. 28.) The ALJ noted that Plaintiff could drive, prepare meals, and manage funds, but during an

9

ER visit was noted to be somewhat distracted. (Tr. 28.) The ALJ also summarized the report of consultative examiner Dr. O'Danovich and found the opinion of the State agency doctor that Plaintiff had a non-severe mental impairment with mild concentration, persistence, or pace limitations persuasive. (Tr. 28, 34.) The ALJ noted a lack of inpatient psychiatric treatment or outpatient therapy as well as the ability to live alone and take care of personal needs and hygiene. (Tr. 34.) Plaintiff argues that the ALJ erred by failing to include any work-related mental limitations in the RFC to capture Plaintiff's concentration, persistence, or pace limitations.

Even when an impairment is non-severe, an ALJ must still include limitations from those impairments. SSR 96-8p; *Stage*, 812 F.3d at 1125 (RFC must include limitations from all impairments, even those that are non-severe). Plaintiff contends that the evidence shows that her mental impairment could have reasonably limited her performance of work tasks. Examination showed Plaintiff to be mildly depressed. (Tr. 587.) She appeared confused during a May 2019 hospitalization. (Tr. 418.) A June 2019 examination showed flat facial affect. (Tr. 446.) Plaintiff was tearful upon consultative examination. (Tr. 451.) She could not recall three words after a five-minute lapse. (Tr. 451.) She could not complete serial 7s backwards from 100; she incorrectly identified the direction the sun rises in and did not know how many weeks are in a year. (Tr. 451.) She had limited concentration and reported anxiety and mood swings. (Tr. 452.) Agency interviewer R. Bonilla noted that Plaintiff had problems talking and answering on the phone; she sounded nervous and in pain on the phone. (Tr. 230.) Plaintiff's medications caused low energy and drowsiness. (Tr. 57.) She did not finish what she started and did not follow written instructions well. (Tr. 258.) She had trouble handling changes in routine. (Tr. 263.)

The ALJ acknowledged that Plaintiff was confused during treatment and summarized

Dr. O'Danovich's consultative examination. (Tr. 28.) However, the ALJ selectively did so, highlighting findings such as cooperation and fair recent memory but omitting mention of a failure to perform serial 7s and an inability to state the number of weeks in a year or direction the sun rises. (Tr. 28.) While the ALJ mentioned that Plaintiff was tearful, the ALJ did not explain why this abnormal finding did not support including mental limitations in the RFC nor why the aforementioned normal findings were more probative of Plaintiff's condition. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010) ("An ALJ must explain why he does not credit evidence that would support strongly a claim of disability, or why he concludes that such evidence is outweighed by other evidence").

Plaintiff asserts that Dr. O'Danovich's opinion as well as other psychiatric evidence reasonably suggested that Plaintiff's mild limitations in concentrating, persisting, and maintaining pace translated into work-related functional limitations such as an inability to remember instructions or handle changes in routine due to concentration deficiencies. The ALJ did not explain why the evidence did not warrant further limitations such as off-task time and limitations on workplace changes to accommodate concentration, persistence, or pace deficiencies. In particular, an inability to perform serial 7s as well as mood abnormalities support that Plaintiff would have trouble sustaining workplace changes and tasks of any complexity. SSR 96-8p. Thus, remand is warranted on the above issues related to Plaintiff's mental impairments.

Next, Plaintiff argues that the ALJ's symptom evaluation is not supported by substantial evidence. The ALJ found that Plaintiff's allegations were not entirely consistent with the record. (Tr. 31.) The ALJ opined that the RFC was supported by Plaintiff's activities, but did not otherwise assess Plaintiff's activities of daily living with any specificity. (Tr. 35.) SSR 16-3p

11

requires an ALJ to assess activities of daily living in evaluating whether a claimant's allegations are consistent with the record. SSR 16-3p; *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence"). Plaintiff points out that she testified that she had to take breaks from doing household chores every 15 minutes and could not lift more than five pounds. (Tr. 255.) She could not bend over due to back and shoulder pain and would drop items that she was carrying. (Tr. 255.) It took her longer to prepare meals due to problems with extended standing; she could not do yard work and would do a little laundry. (Tr. 257.) Her leg and back pain was so severe it impacted her ability to clean her house; she had problems walking, felt that her legs and back locked and cramped up, and needed assistance getting out of bed. (Tr. 269.) She did not drive after taking her pain medications as they caused her to fall asleep. (Tr. 57.) She did not finish what she started and did not follow written instructions well. (Tr. 258.)

      Plaintiff argues that the ALJ did not explain how he concluded that Plaintiff's daily activities supported that she could sustain full-time work where those activities show that Plaintiff struggled to perform even the most basic daily activities without breaks. (Tr. 49-51.) The ALJ did not address that Plaintiff could perform her limited daily activities at her own pace, with breaks as needed, and without supervisory demands. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("the failure to recognize the[] differences [between activities of daily living and the demands of full time work] is a recurrent, and deplorable, feature of [ALJ's] opinions"). By failing to even assess Plaintiff's highly limiting daily activities in the symptom evaluation beyond summarizing some of them, the ALJ selectively considered the record in finding Plaintiff's allegations inconsistent, rendering the decision unsupported by substantial evidence.

12

Further, the ALJ noted that while Plaintiff was prescribed gabapentin, fentanyl patch, and oxycodone/Percocet, the record did not reflect injections or physical therapy. (Tr. 34.) Plaintiff contends that the ALJ erred by implying that Plaintiff's use of strong medication treatment was inconsistent with her allegations of pain and associated limitations. The use of potent opioid medications is the kind of serious treatment that should have persuaded the ALJ to credit those limitations. *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) (willingness to take heavy doses of strong drugs indicates that a claimant's complaints of pain are likely valid). The ALJ did not explain why, if both Plaintiff and her providers agreed that her pain and symptoms were sufficiently severe to warrant serious opioid treatment, the ALJ did not credit the severity of pain that Plaintiff alleged.

The ALJ also noted that doctors did not administer injections or recommend PT. (Tr. 34.) However, the ALJ cited no evidence that given Plaintiff's impairments, either injections or PT were currently appropriate. The ALJ's conclusion was nothing more than impermissible medical speculation. *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir.1999) (decision based on speculation is not supported by substantial evidence). Thus, for all the above reasons, remand is warranted for a proper evaluation of Plaintiff's symptoms.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: December 28, 2021.

s/ William C. Lee
William C. Lee, Judge
United States District Court
